# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

### CIVIL ACTION NO. 5:13-CV-00383-KSF

KAREN LAWRENCE, Personal Representative for
the ESTATE OF CHARLES HOFFMAN, deceased,
and CHARLES HOFFMAN,

      Plaintiff,

v.                                                CASE NO: 5:13-cv-383
                                                    HON. GREGORY F. VAN TATENHOVE

CHRISTINE E. GREENE,
WILLIAM TYLER O'BRIEN,
SHAWN MOODY, and
DOUG THOMAS,
in their individual and official capacities,

      Defendants.

---

### PLAINTIFF'S AMENDED PRETRIAL MEMORANDUM[1]

---

[1] (Plaintiff's *Pretrial Memorandum* is amended only as to Section IV, # 8, 9).

I.    **S**UCCINCT **S**TATEMENT OF **F**ACTS:

On October 14, 2012, Charles Hoffman ("Decedent Hoffman") was placed in the custody of the Madison County Detention Center ("MCDC") for a parole violation that did not involve a violent or sexual offense. On November 7, 2012, Decedent Hoffman, who was visibly, badly depressed, was subsequently transferred to isolated housing within MCDC. At some point in time, Decedent Hoffman reported to both Defendant Moody and O'Brien that "he might hurt himself, he just needed to talk to somebody, and he felt like he was going to hurt himself or kill himself." Despite knowing Decedent Hoffman's suicidal ideations, Defendants Moody and/or O'Brien failed to do anything to help him.

On November 10, 2012, Decedent Hoffman tragically committed suicide by hanging himself using a bedsheet and a plastic bag. Specifically, Mr. Hoffman threaded a plastic bag through a small hole in the air vent and tied the other end of the bag to the bedsheet, which he made into a noose. Defendant Christine Greene went to Mr. Hoffman's cell at 8:42 p.m. and found him hanging from the ceiling. In an attempt to cover up her knowingly and longstanding violations to the MCDC policy that was in effect on the day of Mr. Hoffman's suicide which required her to check every twenty minutes on inmates in isolated housing—which included Mr. Hoffman, Defendant Greene lied to Detective Keeton of Kentucky State Police as to her contact with Decedent Hoffman prior to his untimely death. Specifically, Defendant Greene stated to Detective Keeton that she had spoken with Decedent Hoffman numerous times.

However, after watching the jail surveillance video and looking at the log sheets, Detective Keeton concluded that Defendant Greene had in fact lied to him regarding her checks on Decedent Hoffman. In fact, Defendant Greene had lied about a number of things such as the following: (1)

2

the jail video disputed the time she claimed she checked on Decedent Hoffman; (2) Defendant Greene stated to Keeton that she checked on Decedent Hoffman at various times, but she did not; (3) Defendant Greene stated that Decedent Hoffman was waiving to her but she did not see such a thing because she did not check Decedent Hoffman at the time she claimed; (4) in fact Defendant Greene attempted to tell Keeton that the video system did not accurately note times, but Keeton told her, "You're wrong. You're lying again;" and (5) after Detective Keeton watched the videotape, it was obvious that Greene "had went back and changed the logs and the sheet. That was the first thing that really caught my attention and concern." As part of his investigation, Detective Keeton also admitted that because Defendant Greene had lied about entering times into the logs that she was also lying about the fact that Decedent Hoffman was truly in need of help. During his investigation, Detective Keeton concluded that the logs were changed and altered in an attempt to cover up the fact that Hoffman was not checked on as required.

According to the altered and falsified log sheets, Decedent Hoffman was checked on a total of 21 times, but the truth was that he was only checked on a total of seven times from 3:00 p.m. to the time he was found dead in his cell at 8:42 p.m. In fact, for a period of 3 hours and 42 minutes, no corrections officer had once checked on Decedent Hoffman, despite the fact he was supposed to be checked on every 20 minutes, at least. Even more appalling is that fact Keeton's investigation revealed that Defendant Doug Thomas knew that the logs were falsified. Detective Keeton was also able to conclude that there was a history of practice that isolation cell inmates were not checked on all the time. In fact, the practice of just writing anything down in the logs spanned back years; even to the time when now jailer Doug Thomas was a deputy.

Consequently, Mr. Hoffman's mother, Karen Lawrence, the Personal Representative of the Estate is alleging the following claims against Defendants, which remain to be tried: (1) that

3

Defendants Moody and O'Brien violated Mr. Hoffman's Fourteenth[2] Amendment right to be free from deliberate indifference to his serious medical needs, which includes his psychological needs, when they did not place him on suicide watch or otherwise address his apparent desire to hurt and/or kill himself; (2) that Defendants Moody and O'Brien were negligent under Kentucky law in this same manner by failing to place Mr. Hoffman on suicide watch or otherwise address his apparent desire to hurt and/or kill himself; (3) that Defendant Greene was negligent under Kentucky law when she failed to check on Mr. Hoffman every twenty-minutes while he was in isolation pursuant to MCDC's policy; and (4) that Defendant Thomas was negligent under Kentucky law when he failed to assure that Defendant Greene and other employees were in fact following MCDC's policy of checking on Mr. Hoffman every 20 minutes while he was in isolation.

## II.    QUESTIONS OF FACT:

1. Whether Defendant Moody and O'Brien perceived an obvious risk that Decedent Hoffman would commit suicide.

2. Whether Defendant Moody and O'Brien disregarded a substantial risk to Decedent Hoffman's safety when they did not place him on suicide watch or otherwise provide him with medical care.

3. Whether Defendant Moody and O'Brien owed Decedent Hoffman a duty to exercise reasonable care to place him on suicide watch or otherwise provide him with necessary medical care because they knew or had reason to believe that Decedent Hoffman might commit suicide.

4. Whether Defendant Moody and O'Brien breached this duty by failing to exercise reasonable care by not placing him on suicide watch or otherwise providing him with necessary medical care to assure that Decedent Hoffman did not cause harm to himself.

5. Whether the negligence of Defendants Moody and O'Brien was a proximate cause of the injuries to Decedent Hoffman.

---

[2] Plaintiff claims that the deliberate indifference standard under the Fourteenth Amendment applies as he was arrested for a parole violation and awaiting a hearing on said violation while in the custody of MCDC.

4

6. Whether Defendant Greene owed Decedent Hoffman a duty to exercise reasonable care to check on Decedent Hoffman every twenty minutes pursuant to Madison County Detention Center's Policy.

7. Whether Defendant Greene breached this duty by failing to exercise reasonable care by not checking on Decedent Hoffman every twenty-minutes to assure that Decedent Hoffman did not cause harm to himself.

8. Whether the negligence of Defendant Greene was a proximate cause of the injuries to Decedent Hoffman.

9. Whether Defendant Thomas owed Decedent Hoffman a duty to exercise reasonable care to train and supervise his employees, including Defendant Greene, in order to assure that these employees were checking on Decedent Hoffman every twenty-minutes pursuant to Madison County Detention Center's Policy.

10. Whether Defendant Thomas breached this duty by failing to exercise reasonable care by failing to train and supervise his employees, including Defendant Greene, in order to assure that these employees were checking on Decedent Hoffman every twenty-minutes pursuant to Madison County Detention Center's Policy to assure that Decedent Hoffman did not cause harm to himself.

11. Whether the negligence of Defendant Thomas was a proximate cause of the injuries to Decedent Hoffman.

### III. QUESTIONS OF LAW:

1. Whether Defendants Shawn Moody and/or William Tyler O'Brien's deliberate indifference to Decedent Hoffman's serious medical needs which, included his psychological needs, violated Decedent Hoffman's Fourteenth Amendment constitutional rights.

2. Whether Defendants Shawn Moody, William Tyler O'Brien, Doug Thomas and/or Christine Greene's action and/or inaction against Decedent Hoffman were negligent under Kentucky common law.

### IV. EXPECTED EVIDENTIARY OBJECTIONS:

1. Plaintiff objects to the admissibility of any evidence of Decedent Hoffman's complete criminal record including, but not limited to, arrests, pleas, convictions, and/or sentencing. Moreover, Plaintiff objects to any reference/introduction of the specific details as to why Decedent Hoffman was housed at MCDC at the time of the subject incident other than he had committed a parole violation in which the underlying crime was not violent or sexual

5

in nature or a drinking and driving offense. Furthermore, Plaintiff objects to any reference/introduction of evidence alluding to Decedent Hoffman was an absconder or had cutoff his teather. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402, 403, and 609.

2. Plaintiff objects to the admissibility of any evidence of the complete criminal record of any of Plaintiff's witnesses. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402, 403, and 609.

3. Plaintiff objects to the admissibility of any evidence or reference to Decedent Hoffman's alleged use of illegal drugs and/or his alcohol use including, but not limited to, any reference to, audio recording, video recording and/or transcript of any conversation between Decedent Hoffman and any other individual in which contraband. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402 and 403.

4. Plaintiff objects to the admissibility of any evidence or reference to Decedent Hoffman's marriage and/or pending divorce at the time of death from Carmen Arlene Newland. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402 and 403.

5. Plaintiff objects to the admissibility of any evidence or reference to the age of Dana Allen, Decedent Hoffman's girlfriend at the time. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402 and 403.

6. Plaintiff objects to the admissibility of any evidence or reference to the police report filed by Karen Lawrence on or about April 5, 2012 regarding an alleged theft of personal property by Carmen Arlene Newland in which such allegation was not prosecuted. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402 and 403.

7. Plaintiff objects to the admissibility of any evidence, including reports and testimony, of Jimmy Cornelison, the Coroner of Madison County. The admission of this evidence is in violation of the Federal Rules of Evidence including, but not limited to, *FRE* 402 and 403.

8. Plaintiff anticipates offering the deposition testimony of the following deponents pursuant to Fed. R. Civ. P. 32(a)(4), who are current or former inmates at the MCDC into evidence if they cannot be located or cannot be made available for trial: Christopher Foster; Elvis Isaacs; Brent Allen Oliver; Curtis Lee Broghton and Chris Scott Jaggers.

9. The following individuals invoked their Fifth Amendment right against self-incrimination during their deposition:  Defendant Christine Greene; Defendant William Tyler O'Brien; Defendant Shawn Moody; Defendant Doug Thomas; Cory Dunning; Jeff Roberts; Craig Whitaker; Vickie Richardson; Scott Belanger; Jamie Wynn; Jeremy LaGrange; Danny King, Jr.; Greg Johnson; Kathy Harrison; Keith Trickler; and Faye Winkler.  It is anticipated that these individuals will invoke their Fifth Amendment right at trial if called as a witness.  Tanya Fielder was released from her deposition so that she could consult with outside counsel and it is anticipated that she will invoke her Fifth Amendment right against self-incrimination if called as a witness at trial also. Accordingly, the jury must be instructed that a negative inference can be made by these witnesses' assertion of the Fifth Amendment and ultimate refusal to answer the questions posed to them. *Baxter v. Palmigiano*, 425 U.S. 308 (1976).  Clearly, the trier of fact in a civil case is absolutely permitted to draw adverse implications and inferences from a civil litigant's invocation of the privilege.  *Id., Mitchell v. United States*, 526 U.S. 314 (1999).

V. **PENDING MOTIONS:**

Currently pending before this Honorable Court are the following motions:  (1) *Defendants Motion to Bifurcate* **[D/E 218]**; and (2) *Defendants Motion to Remand* **[D/E 223].**  Plaintiff will also be filing *Motion in Limines* by Friday, December 15, 2017, related to her evidentiary objections in section IV of this instant pleading.

VI. **STATUS OF SETTLEMENT NEGOTIATIONS AND LIKELIHOOD OF SETTLEMENT:**

The parties have and are actively engaged in good faith settlement negotiations and will be attending a Settlement Conference with Magistrate Judge Wehrman on December 19, 2017 at 10:00 a.m.

7

**VII.   THE FEASABILITY OF ALTERNATIVE DISPUTE RESOLUTION:**

The parties are attending a Settlement Conference with Magistrate Judge Wehrman on December 19, 2017 at 10:00 a.m.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**s/_Christopher J. Trainor_____**
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
Amy.derouin@cjtrainor.com

Dated:  December 14, 2017
AJD/kab

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of the Court on this 14th day of December, 2017. Notice of this filing will be sent to counsel of record via the Court's CM/ECF system. Parties may access this filing through the Court's CM-ECF system.

s/Christopher J. Trainor_____
COUNSEL FOR PLAINTIFF
