UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

KAREN LAWRENCE, Personal )
Representative for the Estate of Charles )
Hoffman, deceased, )
 ) No. 5:13-CV-383-GFVT-REW
    Plaintiff, )
 ) RECOMMENDED
v. ) DISPOSITION
 )
MADISON COUNTY, et al., )
 )
    Defendants. )

\*\*\* \*\*\* \*\*\* \*\*\*

Although the parties settled this case at mediation before Judge Wehrman, there has been much difficulty in bringing the matter to a close. The post-settlement record—most of which has involved efforts in Michigan to solidify Plaintiff's underlying authority to settle—is extensive. Indeed, the Michigan courts, despite blessing prior acts of Karen Lawrence as authorized, replaced Plaintiff as personal representative of the Estate at issue.

Court approval of the settlement and attorney fees/expenses was not a term of the parties' deal. The defense balked at approval of the settlement generally until Plaintiff could secure Michigan probate authorization. Plaintiff's counsel has repeatedly asked this Court to approve payment of his attorney fees and expenses (based on the retainer agreement) from the settlement funds. *See, e.g.*, DE 287 (Minute Entry Order). Seemingly, the Michigan court anticipates that this Court will review the claimed fee and expense petition for propriety.

1

The Court views federal fee review and approval as, on this record, unwarranted. Accordingly, the Court recommends that Judge Van Tatenhove recognize the validity of the settlement, as requested, but otherwise deny DE 290.

*Background Information*

In November 2012, Charles Hoffman died while incarcerated at the Madison County Detention Center. DE 1 (Complaint). Hoffman's mother, Karen Lawrence, in her role as personal representative, filed various § 1983 and tort claims against Defendants in November 2013. *Id.* After four years of contentious litigation—including a successful Lawrence appeal (DE 215, Sixth Circuit Mandate)—Defendants, on December 19, 2017, agreed to pay Plaintiff a $300,000 lump sum to settle the matter. DE 271 (Settlement Agreement Tr.).

In January 2018, Hoffman's widow, Carmen Newland, notified the Court, via letter (DE 269), of her concerns about distribution of the settlement proceeds. Soon after, Plaintiff moved for settlement approval, DE 273, and for the Court to disregard a Michigan probate court's order that suspended Ms. Lawrence's authority as personal representative pending a hearing to address Ms. Newland's concerns, DE 274. The Court, after a status conference, denied both motions until the Michigan court had an opportunity to address Ms. Lawrence's authority to act on behalf of the estate in the federal matter. DE 287 (Minute Entry Order).

On April 11, 2018, the Michigan court ousted Karen Lawrence from her fiduciary role, appointed Hon. Kerri Lynn Selleck (a local Michigan attorney) as "Special Personal Representative of the Estate," and ordered "that the matter of how the net settlement proceeds should be distributed shall remain a matter for hearing before this Court[.]" DE

297-2, at 3. Nonetheless, the Michigan court, on April 13, 2018, entered a stipulated (the newly appointed fiduciary, Ms. Selleck, and counsel for both Ms. Newland and Ms. Lawrence all joined) finding:

> [T]hat Karen Lawrence was authorized and had authority to approve the settlement reached in [the federal matter], for Three Hundred thousand ($300,000.00) dollars.

DE 297-3, at 2–3. Finally, the Michigan court's April 25, 2018, Order provided that after the Eastern District of Kentucky:

> makes a ruling on the costs and fees of the trial attorney, Christopher Trainor, and Christopher Trainor secures the $300,000.00 settlement draft, that Christopher Trainor shall remit the net proceeds minus his authorized costs and attorney fees, by check, payable to the Special Personal Representative, Kerri Lynn Selleck.
> . . . .
> [T]his Order does not dispose of the last pending claim in this action, and does not dispose of this case.

DE 300-2, at 3. In sum, the Michigan court approved the settlement (and confirmed Ms. Lawrence's then-existing authority), appointed a new personal representative, and, currently, awaits this Court's fee ruling, after which it will oversee the Hoffman net estate disbursement.

Plaintiff's motion for fees and costs now stands before the Court. DE 290 (Motion); DE 298 & 299 (Responses); DE 300 (Reply). Plaintiff, specifically, asks the Court to do the following:

a. Enforce the settlement;

b. Approve the tendered fee and expense requests;

c. Direct settlement conclusion, whereby the defense will pay the settlement amount and Trainor will disburse his fee/expense portion and then pay the balance to the proper Michigan fiduciary, for further administration in the Michigan probate court.

3

*See* DE 290, at 1, 6. Ultimately, the Court perceives no remaining concrete dispute to support the rulings sought. The Court recommends that Judge Van Tatenhove simply find that the parties entered a valid settlement before Judge Wehrman and direct the defense to conclude the authorized settlement, subject to proper disbursement oversight by the Michigan probate court.[1]

*Analysis*

First, all stakeholders have notice. Plaintiff has pursued settlement approval since the mediation. The Court has ensured that every known claimant or interested party is aware. *See, e.g.*, DE 291 (ordering service on Ms. Newland and her Michigan counsel); DE 295 (same; also ordering service on the then-newly appointed personal representative, Ms. Selleck). No one has sought to intervene, complained about the deal, or objected to the settlement parameters. In fact, no one outside the case has filed any objection to Mr. Trainor's fee and expense requests.

Second, the settlement itself was an arms' length bargain originating from a difficult and hotly contested case. The docket entries, to date, total 301. The record shows that the case involved 6,000+ pages of discovery, over 25 depositions, significant discovery, and other interim litigation, to include an interlocutory appeal. The case centered on a jail fatality, and the defense disputed each and every facet of liability, causation, and the scope of damages. The resulting settlement reflected a negotiated end to a case that had many challenges on both sides. The Court views the settlement as valid and appropriate.

---

[1] If, as the record suggests, all Estate claimants are in agreement and have no objection to the fees and expenses, the Court questions why they have not simply pursued another stipulation in Michigan.

Third, Defendants oppose the approval motion, but only nominally. *See* DE 298, at 3 ("Although they take no position with respect to [fee and cost] propriety . . . the Madison County Defendants object to Plaintiff's Motion[.]"). The Michigan court has fully validated the original authority of Plaintiff Lawrence. *See* DE 297-3, at 2–3. Further, Lawrence's replacement in Michigan, as personal representative of the Estate, also has signed a release. DE 298-1. Defendants' legitimate original concerns regarding authority and existence of a binding deal stand resolved.

Fourth, there is not a persisting controversy, at least not one before this Court. Attorney Trainor seeks approval of his fees and expenses, but the settlement was a gross resolution with Defendants, who have no stake in the underlying fee disbursement between the Estate and Trainor. Lawrence, an Estate fiduciary, has not objected to Trainor's application, but she is no longer the proper representative. None of the new or collateral Michigan stakeholders (Ms. Newland, the alleged spouse of decedent or Ms. Selleck, the new Personal Representative) have sought to intervene, appeared, or communicated an objection to the current motion.

The posture counsels against further Court involvement in the fiscal conclusion. Although the Court theoretically has inherent power to address fees in a case before it,[2] in this context, that exercise would be imprudent. This is so because there is not a true interested party (other than the lawyer) before the Court.[3] Lawrence no longer has

---

[2] *Krause v. Rhodes*, 640 F.2d 214, 218 (6th Cir. 1981) ("A federal district judge has broad equity power to supervise the collection of attorneys' fees under contingent fee contracts.").

[3] The Court notes potential Article III justiciability concerns raised by the case posture. The justiciability inquiry is separate from the subject matter jurisdiction issue referenced by counsel. The fee request merits stand undisputed. This is not a case in which the fee issue is intertwined with resolution of case merits. *See, e.g.*, *Krause*, 640

authority to act for the Estate, Defendants have no real interest, and no Estate claimants are present.[4] The Court views any ruling, beyond simply declaring that the settlement is valid and that the defense shall tender the settlement funds, as unwarranted.[5]

---

F.2d 214. Nor is there minor involvement. *See Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988) ("Independent investigation by the court as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest is required."). In short, the attorney's fee question is an independent, undisputed issue, and Plaintiff identifies no unique circumstances that particularly justify an autonomous Court investigation here. Again, Court involvement was not a settlement term.

Thus, the fee approval request, in this case posture and in the Court's view, potentially seeks an advisory opinion. *Flast v. Cohen*, 88 S. Ct. 1942, 1951 (1968) ("[T]he rule against advisory opinions also recognizes that such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests." (internal citations omitted)). As noted previously, Defendants do not (nor, for that matter, does Ms. Lawrence, Ms. Newland, or Ms. Selleck) dispute the propriety of the specific fees and costs requested. *See Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011) ("[T]he opposing party also must have an ongoing interest in the dispute, so that the case features 'that concrete adverseness which sharpens the presentation of issues.'" (internal citation omitted)). In analogous—but not identical—circumstances, *i.e.* "[w]here on the face of the record . . . the only concrete interest in the controversy has terminated," the Supreme Court has stated that an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim[.]" *Lewis v. Cont'l Bank Corp.*, 110 S. Ct. 1249, 1255 (1990). Where the Court senses it is drifting into the realm of advising, rather than resolving a concrete dispute, it raises concerns of this type.

[4]    This leaves only the Court to probe for and assess fee petition content. As the Court previously remarked, the base fee of 40% generally seems appropriate (as a federal and Kentucky ethics matter, per SCR 3.130 (1.5)) in a case of this type and scope. *See, e.g.*, *Venegas v. Mitchell*, 110 S. Ct. 1679, 1684 (1990) (finding "no reason in the record or briefs to disturb" the Ninth Circuit's conclusion that a 40% § 1983 contingency fee was reasonable). Trainor worked a challenging case very hard, and § 1983 jail-death litigation is full of hurdles (as, *e.g.*, the interlocutory appeal shows).

However, the Court observes concerns over some aspects of the application. Thus, the record includes no *separate* fee contract addressing the appellate arrangement (and the retainer, DE 290-5, at ¶ 12, required such a document: "A new appellate legal services agreement must be entered into."). The records lack precision as to the hours spent regarding the appeal, which was interlocutory and concerned only one defendant. Further, there is no affidavit supporting the expenses, and the Court sees many entries, particularly as to document management (*e.g.*, hundreds of dollars for undescribed copies or for scanning/shredding), it would question. Additionally, Michigan law seems to cap

6

As such, the Court **RECOMMENDS** as follows:

1. Judge Van Tatenhove should **DENY** DE 290, **in part** and **GRANT** DE 290, **in part**. Specifically, the District Court should order prompt conclusion of the settlement. Michigan has validated the authority of Karen Lawrence, and both Lawrence and the new Personal Representative, Ms. Selleck, signed releases. This resolved the defense exceptions. The settlement is valid, and the defense should immediately tender the settlement funds to Trainor, payable to his firm and to the Estate.

2. Judge Van Tatenhove should decline to approve the particular fee and expense issues. There is no extant dispute, and the Estate claimants and Michigan personal representative should, if agreed, simply submit the disbursement details for

---

contingent fee contracts in wrongful death cases at 1/3. *See* MCR 8.121 (deeming contingent fees in excess of 1/3 in wrongful death cases "clearly excessive" under MRPC 1.5(a)). Although the Court never viewed this case as a pure wrongful death action, Plaintiff has characterized it as such. *See, e.g.*, DE 285, at 9 ("In her capacity as personal representative, Plaintiff is suing for the use and benefit of all persons who qualify under Michigan's Wrongful Death Act as beneficiaries[.]"); DE 286, at 11 ("Plaintiff is a non-resident personal representative of the alleged beneficiaries under [the] Michigan Wrongful Death Act, including herself, in which these claims pass directly to the beneficiaries and not the Estate[.]"); *id.* at 12 ("Notably, Plaintiff in this case is not pursuing the wrongful death benefits under Kentucky's Wrongful Death Statute but, instead, Michigan's Wrongful Death Statute."). Michigan also may block a graduated appellate fee. *See generally* State Bar of Michigan Ethics Opinion RI-373 (2015) (describing "same 'claim or action'" standard for additional contingency fees under Michigan ethical rules). Again, with no disputants to vet these issues, the Court elects against unilaterally opening and litigating the topics.

[5] The embedded other fee requests (for post-settlement and for probate legal fees) further justify the Court's reluctance. The fee contract nowhere calls for post-settlement fees of the type sought. Bringing a case to conclusion is part of a lawyer's job. Further, any probate fees must come from the probate court. This is not the appropriate forum.

Michigan court oversight and approval. If there is an actual dispute, the court there can resolve it under Michigan or other applicable law.[6]

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for *de novo* consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 16th day of May, 2018.



Signed By:
*Robert E. Wier*
United States Magistrate Judge

---

[6] The parties and Michigan court seem to expect this Court to approve or assess the fee/expense petition. No party has pointed to any law requiring court approval as part of resolving this Eastern District of Kentucky case; the litigants certainly did not include such a step in the material terms. Perhaps the fee and expense payment is a probate expense, calling for court involvement in Michigan, but the Court here sees no legal requirement for it to process the current, essentially unilateral and uncontested post-settlement motion. Under the circumstances, the Court views the previously enumerated factors counseling against federal resolution as determinative.

8